Well, I am very clear as to what my duty is, and I wish to discharge it, although it will involve me in considerable more trouble and time, and possibly a great deal more labor, but I think in the present situation it is my duty to see that the church file an answer in this case in order that it may receive any benefits that by any possible theory of the law can fall to it in the event of a decision which now looks to me as though it might be possible. I therefore think I ought to have the present solicitor for the church file an amended answer of that nature and require that it be done *Page 200 
at once, and that the case be finished at a day to be at this time fixed so there will be no delay of more than a week or so by reason of the adjournment and by reason of the amendment. It is quite possible that at the subsequent hearing no testimony will be needed that has not already been introduced, but with a new answer on file everyone should have an opportunity to introduce new testimony to meet the averments of the new answer, if they desire.
Now, in order that all counsel may see what I have in mind at this time that impels me to take this course aside from the fact that the answer which is now on file was prepared by the same counsel who represents Mr. McNeill with the understanding that the interests of him and the church were identical, and that the present counsel of the church is the substituted counsel, appointed since the answer was filed — aside from that fact, which would seem of itself to call for an amended answer — my thoughts are these, which I only express in a tentative way.
The early and leading case in our court of errors and appeals,Stewart v. Lehigh Valley Railroad Co., 38 N.J. Law 505, touching the duties of a board of management, whatever board that may be — a board of directors of a corporation, or, I apprehend, any board of a church that has charge of the business affairs of a church — when dealing with the affairs of the corporation, are trust duties of a very high and a very important and serious nature by reason of the trust that is imposed upon such managing officers. In this connection I would suggest that it might be best for proofs to be made in this case showing exactly what the duties of the vestry of a church may be in the management of its business affairs. Perhaps we all know, but we don't know authoritatively, but it will be necessary, possibly, to prove it unless counsel can agree upon it. Stewart v. Lehigh ValleyRailroad Company held, in effect, that a director of a corporation cannot deal with the corporation which he represents. It does not matter how much good faith may have been exercised on his part, his contracts with his corporation are voidable at the instance of the corporation — they will not stand if repudiated as contracts. The *Page 201 
reason for that is perfectly plain. One cannot buy from himself, one cannot bargain with himself, and cannot in the capacity of an individual deal with himself as trustee, and to the same extent he is prevented from dealing with the other members of the board. He cannot by walking out of the room relieve himself of the duties and responsibilities of a director and trustee; those duties obtain in his absence just as they do in his presence. His contract with the board is subject to repudiation by the corporate body itself at their option. That is the general principle, and that principle, I take it, is applicable in this case. Now, there is to be added to that the very, very important circumstance in this particular transaction that Mr. McNeill, who purchased this property, from the evidence now in, appears to have known that if he got a perfect title to it he could in all probability turn it over to someone else at a considerable profit. In his capacity as a member of the vestry he had received an offer, which it was his duty to submit to the vestry, of $5,000, or $6,000 for this very land. As a member of the vestry it was his duty to submit that offer even though he might have thought that the church could not make a good title. When he did find through Mr. LeDuc there was a possibility of the church to make a good title certainly a duty was present to submit to the vestry the fact he could get $5,000 or $6,000, that they could get $5,000 or $6,000 for this land if a good title could be made when he was making a proposition to them that he would give them $1,000 and take upon himself the responsibility and the expense and the risk of procuring a good title. That, obviously, wouldn't cost him $4,000, so it seems to me there is at least a strongprima facie case in favor of this church, first, upon the ground of the inability of the trustee to buy the property for himself at all in any kind of manner, fair or unfair; second, because of the possibility — and I am only referring to it now as a possibility — of a conclusion under the facts of this case that there was an added duty cast upon him by reason of the offer that had been made to him to submit such an offer to the board before he accepted title to it under any kind of an agreement. I think that ought to appear as a defensive pleading of the church. *Page 202 
There has been great delay on the part of the church in repudiating this transaction. Now, there may be some reason for the delay and there may not. That perhaps can be a matter of defense upon the part of Mr. McNeill, it may be a matter that can be explained by the church, but it appears to-day that the very first that anybody knew of this prior offer to Mr. McNeill has been very recently, so that there could be no repudiation by the church upon the claim that this offer had been made to Mr. McNeill and had not been communicated by him to the church prior to the time the church received the knowledge of the fact an offer had been made, so there can be no laches there. The facts are, they have only recently received this knowledge, and it may be, too, that they haven't known until this suit was brought that Mr. McNeill has received $30,000 for this property. That fact might excuse them from a more prompt repudiation, or as the cases call it, exercising their option to declare the contract void, which is, in effect, a repudiation.
Now, I think I am in the performance of a plain duty, although an onerous one, in making provision for the amendment to this answer and further hearing. Now, Mr. Lloyd, I will expect you to prepare an amended answer and serve it upon all adversary counsel within a week. Can you do that?
Mr. Lloyd — Yes, sir.
The Court — How long do you want in which to make any answer to that, in case an answer should be desired?
Mr. LeDuc — I would say, if the court please, five days.
The Court — Very well, that will make it twelve days. Now, suppose I give you March 12th, after motions, for final disposition of the case — will that be satisfactory, can everybody be ready by that time?
 SUPPLEMENTAL.
The Court — I think it important that the court be informed, through evidence, the exact relations between the church and its vestry. The option of repudiation, in cases of this class, is ordinarily exercised by the stockholders of a commercial corporation. Just how nearly a church as a *Page 203 
body represents the stockholders of a corporation I am not at this time able to say, but the court should be informed by evidence touching that. In preparing an answer Mr. Lloyd should determine for himself where the power of repudiation lies in a case of this nature.